UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRITTANY S.,[1] | : | Case No. 2:25-cv-00311 |
| | : | |
| Plaintiff, | : | District Judge Edmund A. Sargus |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION[2]

Plaintiff filed an application for Disability Insurance Benefits in January 2022. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, it is

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendation within the specified time period.

recommended that the Court **REVERSE** the Commissioner's decision and **REMAND** for further proceedings.

## I.     BACKGROUND

Plaintiff asserts that she has been under a disability since August 15, 2019. At that time, she was thirty-three years old. Accordingly, Plaintiff was considered a "younger person" under the Social Security regulations. 20 C.F.R. § 404.1563(c). Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-3 at PageID 425-48), Plaintiff's Statement of Errors ("SE," Doc. No. 9), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 11), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.     STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

3

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.   FACTS

### A.   The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

Step 1:   Plaintiff has not engaged in substantial gainful activity since August 15, 2019, the alleged onset date.

Step 2:   She has the severe impairments of lumbar degenerative disc disease with right lower extremity radiculopathy, cervical hemangioma at C4, thoracic spine abnormality, depressive disorder, anxiety disorder, right leg and foot complications status post surgery, and obesity.

4

She has the nonsevere impairment of migraine headaches.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "[Plaintiff] can occasionally climb ladders, ropes, and stairs; can carry out simple instructions with no production quotas; can interact supervisors and co-workers frequently and with the general public occasionally."

She is unable to perform any of her past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

(Decision, Doc. No. 7-3 at PageID 430-41.) These findings led the ALJ to conclude that

Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at

PageID 441-42.)

## B. State Agency Medical Consultants

State agency medical consultant Steve McKee, M.D. completed a Disability

Determination Explanation form in February 2022. (AR, Doc. No. 7-3 at PageID 411-

12.) Dr. McKee opined that Plaintiff could lift and/or carry up to twenty pounds

occasionally and ten pounds frequently, stand and/or walk for a total of no more than four

hours in an eight-hour workday, and sit for approximately six hours in an eight-hour

workday. (*Id.* at PageID 411.) Dr. McKee opined that Plaintiff could frequently climb

ramps and stairs, balance, stoop, kneel, crouch, and crawl, and only occasionally climb

5

ladders, ropes, and scaffolds. (*Id.*) Dr. McKee found no manipulative, visual, communicative, or environmental limitations. (*Id.* at PageID 412.)

Diane Manos, M.D. reviewed the updated record and completed a Disability Determination Explanation form at the reconsideration level in July 2022. (AR, Doc. No. 7-3 at PageID 420-21.) Dr. Manos concurred with and adopted the exertional limitations identified by Dr. McKee. (*Id.* at PageID 420.) However she identified the following postural limitations: never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, kneel, crouch, and crawl; and frequently balance and stoop. (*Id.*) As for environmental limitations, Dr. Manos opined that Plaintiff needed to avoid concentrated exposure to noise and all exposure to hazards, such as machinery and heights. (*Id.* at PageID 421.)

The ALJ concluded that the consultants' findings were "not entirely persuasive" because they were "not entirely consistent with, or supported by, the overall evidence of record." (Decision, Doc. No. 7-3 at PageID 438.) The ALJ limited Plaintiff to two hours of standing and walking (as compared to four hours recommended by the consultants) because of the "hearing level medical evidence and subjective reports of ankle swelling and to account for [Plaintiff's] obesity." (*Id.* at PageID 438-39.) The ALJ concluded that the postural and environmental limitations identified by the consultants were "not persuasive," because they were "not consistent with, or supported by, the overall evidence." (Decision, Doc. No. 7-3 at PageID 439.) The ALJ explained:

> For example, the State agency medical consultant at the reconsideration
> level assessed environmental limitations based on increased falls, migraines
> and paresthesia in the bilateral lower extremities (Exhibit 4A/7). However,

6

this is inconsistent with evidence showing [Plaintiff's] migraines are controlled with medications (Exhibits 3F/1, 7, 16, 34; 4F/23; 6F/10, 30), her paresthesia symptoms improved (Exhibit 16F/12), and she had a normal EMG of her lower extremities (Exhibit 5F/49, 54); 16F/8). Moreover, the evidence does not support the need for greater postural limitations given MRI findings that were noted to be essentially normal (Exhibit 5F/37).

(*Id.*)

## C. State Agency Psychological Consultants

State agency psychological consultant Cindy Matyi, Ph.D. completed a Disability Determination Explanation form in May 2022. (AR, Doc. No. 7-3 at PageID 409-10, 412-13.) Dr. Matyi found moderate impairment in the "B criteria" areas of concentrating, persisting, or maintaining pace and adapting or managing oneself. (*Id.* at PageID 409.) She found mild impairment in the areas of understanding, remembering, or applying information and interacting with others. (*Id.*)

In the mental RFC area of understanding and memory, Dr. Matyi indicated that Plaintiff was "not significantly limited" in work-related abilities related to this area. (AR, Doc. No. 7-3 at PageID 412.) Dr. Matyi stated that Plaintiff was "able to comprehend and remember a variety of task instructions." (AR, Doc. No. 7-3 at PageID 412.) Regarding sustained concentration and persistence, Dr. Matyi indicated moderate limitation in the ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR, Doc. No. 7-3 at PageID 412.) She

opined that Plaintiff could "carry out simple tasks, maintain attention, make simple decisions, and adequately adhere to a schedule." (*Id.* at PageID 412.)

As to social functioning, Dr. Matyi indicated that Plaintiff was "not significantly limited" in the work-related abilities and opined that Plaintiff could "maintain adequate workplace interactions." (AR, Doc. No. 7-3 at PageID 413.) Dr. Matyi did indicate that Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting and opined that Plaintiff could "adapt to a setting in which duties are routine and predictable." (*Id.*)

In the "MRFC Additional Explanation" text box, Dr. Matyi explained the basis for her opinion but did not suggest any additional work-related limitations:

> Documentation depicts a depressed, anxious individual who is preoccupied with her chronic health conditions (M.D. will assess physical). Medication attenuates her conditions, yet she experiences breakthrough [symptoms] at times. Her somatic focus serves to magnify mental health [symptoms], thereby impinging upon sustainability/stress tolerance. Totality of the evidence supports limitations and residual capacity described above.

(*Id.*)

Jaime Lai reviewed the updated record at the reconsideration level in July 2022.[3] (AR, Doc. No. 7-3 at PageID 417-18, 421-23.) She affirmed Dr. Matyi's assessment. (*Id.*)

The ALJ concluded that the state agency psychological consultants' findings were "partially persuasive." (Decision, Doc. No. 7-3 at PageID 439.) The ALJ reasoned that

---

[3] There are no credentials after Jaime Lai's name, but she listed a Medical Specialty Code of 38, which indicates a specialty in psychology. (AR, Doc. No. 7-3 at PageID 418, 423; *see also* DI 28084.050 Signatures, Dates, Specialty Name and Specialty (Items 25 to 28 and Items 30 to 33), SSA POMS DI 28084.050 (effective Oct. 27, 2015) (last updated Dec. 7, 2018).)

the consultants' findings regarding Plaintiff's ability to understand, remember, or apply information and to concentrate, persist, or maintain pace were "consistent with, and supported by, the overall evidence including exam findings noting average intelligence, mostly intact memory and adequate concentration and [Plaintiff's] self-reports of her daily activities." (*Id.*) However the ALJ concluded that the consultants' findings "regarding [Plaintiff's] mental [RFC]" were not persuasive because "they are internally inconsistent with regard to [Plaintiff's] ability to comprehend tasks and instructions. Moreover, evidence at the hearing level supports the finding of limitations in social interaction. For example, [Plaintiff] testified that she gets anxious in large crowds." (*Id.*)

### D. Evidence Relating To Plaintiff's Migraine Headaches

#### 1. *Subjective complaints*

Plaintiff alleged that she is disabled by several physical and mental impairments, including migraine headaches. (AR, Doc. No. 7-6 at PageID 617.) Plaintiff reported that she sought treatment from her primary care provider and a neurologist for migraines. (*Id.* at PageID 606, 611.) She submitted a calendar that documented migraines and headaches that occurred on several days during the months of December 2023 and January 2024. (*Id.* at PageID 735-36.) Plaintiff testified during the February 2024 hearing that she experienced migraine headaches with dizziness and nausea. (AR, Doc. No. 7-2 at PageID 372.) She said that her vision "comes and goes" during a migraine. (*Id.* at PageID 386.) Plaintiff stated that her migraines occurred "at least three times a week" and lasted for a half day up to three days. (*Id.* at PageID 388.) Plaintiff stated that medication helped remedy her migraines, but the episodes left her "very weak." (*Id.* at PageID 375.)

Plaintiff said that she had fallen several times due to weakness. (*Id.*) Plaintiff also said that she had not driven in several months because of migraines and dizziness. (*Id.* at PageID 381.)

### 2.    *Medical records*

A September 2019 chiropractic initial evaluation report included migraine headaches in a list of Plaintiff's "past medical history." (AR, Doc. No. 7-7 at PageID 797.) But Plaintiff told primary care physician Quirico Cristales, M.D. in September 2020 that she experienced more severe headaches during the past week. (*Id.* at PageID 952.) She also complained of associated photosensitivity, bilateral tearing, lightheadedness, and dizziness. (*Id.*) Dr. Cristales prescribed Imitrex. (*Id.* at PageID 953.)

An October 2020 brain MRI showed a nonspecific signal alteration in the supratentorial white matter, as well as a nonacute microvascular change that was "possibly associated with complicated migraine, is more likely than demyelinating disease." (AR, Doc. No. 7-7 at PageID 967.) At a follow-up visit with Dr. Cristales later that month, Plaintiff reported "significant relief" from the Imitrex – she now had one to two migraines per week but they "resolved each time" after she took Imitrex. (*Id.* at PageID 931.) Dr. Cristales also prescribed Propranolol. (*Id.*) In November 2020, Plaintiff said she continued to have headaches and her medications helped "most of the time." (*Id.* at PageID 944.) The progress note described Plaintiff's migraines as "moderate, occasional, remains unchanged since last visit." (*Id.*) Plaintiff stated in December 2020 that her headaches had improved. (*Id.* at PageID 950.) According to the progress note,

Plaintiff's migraines were "mild-moderate, occasional, getting better since last visit." (*Id.*)

Upon a referral from Dr. Cristales, Plaintiff saw a neurologist in December 2020. (AR, Doc. No. 7-7 at PageID 814.) Plaintiff reported that her migraines had improved with medication, but she was still experiencing headaches twice per week and they occasionally lasted more than four hours. (*Id.*) She experienced "severe" migraines once per month and stated that stress and anxiety triggered her headaches. (*Id.* at PageID 815.) Plaintiff complained of associated symptoms that included tunnel vision, nausea, photophobia, and phonophobia. (*Id.*) Plaintiff also said that Imitrex made her feel "tense afterwards." (*Id.*) A physical examination was normal. (*Id.* at PageID 818-19.) Snigdha Weinberg, M.D. diagnosed "[e]pisodic migraine [without] aura." (*Id.* at PageID 814.)

A few months later at a follow-up visit in March 2021, Plaintiff told Dr. Weinberg that she had experienced only two migraines since the prior visit. (AR, Doc. No. 7-7 at PageID 821.) She also had a few milder headaches. (*Id.*) Dr. Weinberg reported in April 2021 that a March 2021 brain MRI showed stable appearance of the prior findings with no increase in white matter changes. (*Id.* at PageID 827.) Plaintiff told primary care physician Dr. Cristales in April 2021 that her headaches were controlled with medication but she had been more depressed lately." (*Id.* at PageID 769.) In April and May of 2021, Dr. Cristales described Plaintiff's headaches as "progressively getting better." (*Id.*)

When Plaintiff presented to neurosurgeon Brian Seaman, D.O. for an evaluation of back pain and radiculopathy in June 2021, she denied having headaches. (AR, Doc. No. 7-7 at PageID 759.) Later that month, she told neurologist Dr. Weinberg that she was still

11

having a few headaches per month. (*Id.* at PageID 834.) She said she did not like to take Sumatriptan and instead took extra strength Excedrin which "c[ould] usually help." (*Id.*) Dr. Weinberg documented the same comment in his August 2021 progress note, and a physical examination was again normal. (*Id.* at PageID 840-43.) Between July and December 2021, Plaintiff told Dr. Cristales that her headaches were controlled with medication, and Dr. Cristales consistently noted that her headaches were "progressively getting better." (*Id.* at PageID 784, 940, 960, 1004.)

Plaintiff saw Brandi Brenner, C.N.P. for primary care treatment in February 2022. (AR, Doc. No. 7-7 at PageID 1059.) She said she was taking Propranolol daily and Sumatriptan as needed and had not had a migraine since February 2021. (*Id.*) Plaintiff apparently did not mention headaches at the next visit in May 2022. (*Id.* at PageID 1068.)

In July 2022, however, Plaintiff told neurologist Dr. Weinberg that she had recently started having headaches a few times per week, up from once per month. (AR, Doc. No. 7-7 at PageID 1134.) She said that Imitrex "makes her feel weird and wears her out," so she "takes [extra strength] Excedrin and that may help." (*Id.*) Plaintiff also tried coffee, earplugs, showering, sunglasses, and resting in the dark. (*Id.*) Upon a physical examination, Dr. Weinberg documented decreased sensation but other findings were essentially normal. (*Id.* at PageID 1138.) Dr. Weinberg prescribed Maxalt to be taken as needed with Imitrex. (*Id.* at PageID 1139.) He also recommended Ubrelvy or Nurtec as alternatives to Maxalt. (*Id.*)

In September 2022, Plaintiff told Dr. Weinberg that she was still having migraines once per week, and also experienced ringing in her ears and vision changes prior to a

migraine. (*Id.* at PageID 1141.) Dr. Weinberg reported that an August 2022 brain MRI showed a stable appearance of the prior findings with no new or enhancing lesions. (*Id.*) A physical examination again showed decreased sensation but was otherwise normal. (*Id.* at PageID 1144-45.) Dr. Weinberg continued Plaintiff on Maxalt. (*Id.* at PageID 1146.)

Although Plaintiff apparently did not mention any headache complaints during primary care visits in December 2022 and March 2023, Nurse Brenner referred her to a multiple sclerosis provider for a second opinion about her brain MRI results and balance issues. (AR, Doc. No. 7-8 at PageID 1428-29, 1455-56.)

### 3. The ALJ's decision

At Step Two, the ALJ concluded that migraine headaches are not a "severe" impairment as defined in 20 C.F.R. § 404.1520(c). (Decision, Doc. No. 7-3 at PageID 430-31.) The ALJ acknowledged that Plaintiff had been diagnosed with "migraine without aura, not intractable, and without status migrainosus." (*Id.* at PageID 430.) But the ALJ reasoned: "Evidence shows [Plaintiff's] migraines headaches are controlled with medications and [Plaintiff] reported they were progressively getting better." (*Id.* at PageID 430-31.) The ALJ cited Plaintiff's February 2022 statement to Nurse Brenner that she had "not had a migraine since February of 2021." (*Id.* at PageID 431.) The ALJ concluded: "As the record does not indicate any ongoing, severely limiting pathology due to migraines, the undersigned finds the impairment is non-severe (20 CFR 404.1522)." (*Id.*) The ALJ noted, however, that pursuant to Social Security Ruling (SSR) 96-8p she considered "all of [Plaintiff's] severe and non-severe conditions" when she formulated the RFC. (*Id.*)

13

The ALJ concluded that Plaintiff's migraines did not meet or equal the criteria of a listed impairment. (Decision, Doc. No. 7-3 at PageID 431-32.) Next, the ALJ addressed Plaintiff's migraines when formulating the RFC. (*Id*. at PageID 434-39.) The ALJ summarized Plaintiff's subjective complaints and cited Plaintiff's testimony that she experienced three migraines per week, and that each one lasted approximately a half- to a full day and involved dizziness, nausea, and vision issues. (*Id.* at PageID 434.) After describing the applicable legal standard for evaluating Plaintiff's subjective complaints, the ALJ concluded that although Plaintiff's impairments could reasonably be expected to cause some of her symptoms, the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id*.) Accordingly, the ALJ did not find the consultants' proposed postural and environmental restrictions to be persuasive and so did not include them in the RFC:

> The postural limitations assessed by both State agency medical consultants and the environmental limitations assessed by the State agency medical consultant at the reconsideration level are not persuasive, as they are not consistent with, or supported by, the overall evidence. For example, the State agency medical consultant at the reconsideration level assessed environmental limitations based on increased falls, migraines and paresthesia in the bilateral lower extremities (Exhibit 4A/7). However, this is inconsistent with evidence showing [Plaintiff's] migraines are controlled with medications (Exhibits 3F/1, 7, 16, 34; 4F/23; 6F/10, 30), her paresthesia symptoms improved (Exhibit 16F/12), and she had a normal EMG of her lower extremities (Exhibit 5F/49, 54); 16F/8). Moreover, the evidence does not support the need for greater postural limitations given MRI findings that were noted to be essentially normal (Exhibit 5F/37).

(Decision, Doc. No. 7-3 at PageID 439.)

14

## IV.    LAW AND ANALYSIS

### A.    Plaintiff's Assignments Of Error

Plaintiff asserts two errors: (1) the ALJ erred by failing to properly consider the supportability and consistency of the state agency reviewers' limitations, and (2) the ALJ erred by classifying Plaintiff's migraine headaches as nonsevere. (SE, Doc. No. 9 at PageID 1632, 1639.) For the reasons discussed below, the undersigned concludes that portions of these asserted errors are well-taken and therefore recommends that the ALJ's decision be reversed and remanded.

### A.    Regarding The First Asserted Error, The ALJ Reversibly Erred When Analyzing The State Agency Psychological Consultants' Findings, But Not When Analyzing The Medical Consultants' Findings.

For the reasons explained below, the undersigned concludes that the ALJ reversibly erred in her analysis of the state agency psychological consultants' findings, but not in her analysis of the state agency medical consultants' findings. Therefore, the undersigned finds Plaintiff's first assigned error to be well-taken in part and recommends that the Commissioner's decision be reversed and remanded.

#### 1.    Applicable law

It is well-established that determination of the residual functional capacity (RFC) is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity'"). A claimant's RFC describes the most she can do in a work setting despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1).

15

When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of her limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-

16

CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

The distinction between the supportability and consistency factors is relatively clear when the opinion is from a treating provider. Providers commonly rely on the records in their possession—including progress notes, test results, statements from the claimant, and opinions from other medical providers—to support their medical opinions. An ALJ can readily identify a provider's records that purportedly support their opinion and use them to analyze supportability. Then, when analyzing consistency, the ALJ can readily compare the provider's opinion to opinions and evidence from ***other*** providers. Because each factor (supportability and consistency) considers different evidence, the reviewing court can easily determine whether the ALJ has addressed each factor.

It can be more challenging to distinguish between supportability and consistency when the opinion is from a state agency consultant. Because they do not have their own

17

treatment records, consultants must review and rely upon documents in the administrative record to support their opinions. The ALJ will, however, consider documents from the same administrative record when analyzing both supportability and consistency. If the consultant's report clearly identifies the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents. But if the consultant's report does not clearly identify the documents that support their opinions, then the ALJ's ability to conduct separate supportability and consistency analyses will be limited. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00672-CHL, 2024 WL 1199025, at *6-7 (W.D. Ky. Mar. 19, 2024) (citing *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3652, 2023 WL 2623571, at *6 (S.D. Ohio Mar. 24, 2023) (Jolson, M.J.)).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[4] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023)

---

[4] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

(Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

> **2. Even if the ALJ erred by discounting the postural limitations identified by the state agency medical consultants, any such error would be harmless.**

With respect to the state agency medical consultants' prior administrative medical findings, Plaintiff argues that the ALJ erred because "[t]he RFC failed to include that [Plaintiff] could never climb ladders, ropes or scaffolds, and failed to include any

19

postural limitations regarding crawling, crouching, or kneeling." (SE, Doc. No. 9 at PageID 1634-35.) Plaintiff asserts that "[b]y failing to include these limitations, the RFC may have inaccurately identified jobs that, had greater limitations been included, may not be performed by [Plaintiff]." (*Id.* at PageID 1635.)

In response, Defendant argues that inclusion of these postural limitations in the RFC would not have changed the ultimate outcome of the ALJ's decision. (Mem. In Opp., Doc. No. 11 at PageID 1653 n.3.) The undersigned agrees. Because the alleged error is therefore harmless, the undersigned need not decide whether the ALJ erred when evaluating the state agency medical consultants' proposed postural limitations.

Defendant correctly points out the sedentary jobs identified by the Vocational Expert do not require crawling, crouching, kneeling, or climbing ladders, ropes, or scaffolds. (Mem. In Opp., Doc. No. 11 at PageID 1653.) The Vocational Expert testified that an individual with Plaintiff's vocational profile (i.e., the same age, education, and work history) and the RFC formulated by the ALJ could perform three sedentary and unskilled jobs: Ink Printer, Patcher, and Dial Marker. (AR, Doc. No. 7-2 at PageID 394-95.) The DOT descriptions of these jobs confirm that they do not require crawling, crouching, kneeling, or climbing ladders, ropes, or scaffolds:

> ***Climbing: Not Present - Activity or condition does not exist***
> Balancing: Not Present - Activity or condition does not exist
> Stooping: Not Present - Activity or condition does not exist
> ***Kneeling: Not Present - Activity or condition does not exist***
> ***Crouching: Not Present - Activity or condition does not exist***
> ***Crawling: Not Present - Activity or condition does not exist***

20

DICOT 652.685-038 INK PRINTER, 1991 WL 685750 (4th ed, Rev. 1991); DICOT

723.687-010 PATCHER, 1991 WL 679524 (4th ed, Rev. 1991); DICOT 729.684-018

DIAL MARKER, 1991 WL 679720 (4th ed, Rev. 1991) (emphasis added). Thus, even if

the ALJ had included the proposed postural limitations in the RFC, Plaintiff would still

be able to perform these jobs as they are generally performed in the national economy.[5]

Accordingly, even if the ALJ erred because she failed to explain, or provided an

insufficient explanation, regarding why she rejected the consultants' suggested postural

limitations, any such error would be harmless.

### 3. The ALJ reversibly erred by failing to explain why she did not include an additional mental limitation in the RFC.

Plaintiff argues that the ALJ erred by finding the state agency psychological

consultants' prior administrative medical findings to be only partially persuasive, as they

were "well supported and consistent with the record." (SE, Doc. No. 9 at PageID 1637.)

Plaintiff also argues that the ALJ erred because the RFC "did not include any limitation

regarding Ms. Shoemaker's ability to respond appropriately in a work setting." (*Id.*)

The latter assertion is well-taken. When they considered specific adaptation

limitations, the consultants opined that Plaintiff was moderately limited in the ability to

---

[5] Notably, at least three Social Security Rulings (SSRs) have observed that the postural activities of crawling, crouching, kneeling, and climbing ladders, ropes, and scaffolds do not significantly affect the availability of sedentary jobs. *See* SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996) ("Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work."); SSR 85-15, 1985 WL 56857, at *7 (S.S.A. Jan. 1, 1985) (kneeling and crawling limitations are "of little significance in the broad world of work"); SSR 83-14, 1983 WL 31254, at *2 (S.S.A. Jan. 1, 1983) ("to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch").

respond appropriately to changes in the work setting. (AR, Doc. No. 7-3 at PageID 413.) The consultants further opined that Plaintiff "can adapt to a setting in which duties are routine and predictable." (AR, Doc. No. 7-3 at PageID 413.) Despite the fact that the ALJ referred to this opinion and limitation in her Decision (Doc. 7-3 at PageID 439), the ALJ did not incorporate this limitation into the RFC or explain why she did not do so. Because the error was not harmless, the undersigned recommends that the Commissioner's decision be reversed and remanded.

Defendant concedes that the consultants' RFC findings included a recommended limitation of a setting in which duties are routine and predictable. (Mem. In Opp., Doc. 11 at PageID 1656.) However, Defendant contends that "[t]he ALJ incorporated those findings into the RFC." (*Id*.) The undersigned disagrees. The mental limitations in the RFC only account for Plaintiff's impairment in the ability to sustain concentration and persistence, as well as certain social limitations. (Decision, Doc. No. 7-3 at PageID 434 ("carry out simple instructions with no production quotas; can interact supervisors and co-workers frequently and with the general public occasionally.").) The RFC does not account for the consultants' opinion that Plaintiff is limited to a setting in which duties are routine and predictable.

Further, the ALJ did not explain why she omitted this limitation from the RFC. Instead, after explaining that some of the consultants' findings were persuasive, the ALJ stated: "However, their findings regarding the claimant's mental residual functional capacity are not persuasive, as they are internally inconsistent with regard to [Plaintiff's] ability *to comprehend tasks and instructions*." (Decision, Doc. 7-3 at PageID 439

22

(emphasis added).) This explanation addressed the consultants' opinion that Plaintiff could "comprehend and remember a variety of task instructions" but was limited to "carry[ing] out simple tasks." (*Id.*; *see also* AR, Doc. No. 7-3 at PageID 412, 421-22.) The ALJ did not explain why she rejected the recommended limitation of "a setting in which duties are routine and predictable." (AR, Doc. No. 7-3 at PageID 413.) The ALJ therefore erred in her analysis of the State agency psychological consultants' opinions.

The undersigned acknowledges that although an ALJ is required to consider medical opinion evidence when determining the RFC, she is not required to adopt those opinions or any findings verbatim. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("Although the ALJ may not substitute his opinions for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."). Indeed, even when an ALJ gives great weight to an opinion, "there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). Nevertheless, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling (SSR) 96-8p, 1996 SSR LEXIS 5, at *7 (S.S.A. July 2, 1996).

Here, the undersigned finds that when the ALJ formulated the RFC, she did not account for the consultants' proposed RFC restriction to address Plaintiff's adaptation difficulties. Furthermore, the ALJ did not explain why she did not adopt the consultants' opinion and account for it in the RFC, as required by SSR 96-8p. Because this error was

23

not harmless, the undersigned recommends reversal. *See Rabbers*, 582 F.3d at 651 ("[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'").

## B. The ALJ Reversibly Erred In Her Analysis Of Plaintiff's Migraine Headaches.

### 1. Applicable law

An ALJ evaluates the severity of a claimant's impairments at Step Two of the sequential evaluation. 20 C.F.R. § 404.1520(a)(4)(ii). Plaintiff bears the burden of establishing that she has a severe impairment that meets the twelve-month duration requirement. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012); 20 C.F.R. §§ 404.1509 & 404.1520(a)(4)(ii). However, the burden of establishing that an impairment is severe is a "de minimis hurdle in the disability determination process," *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988), and is intended only to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). An impairment is severe if it "significantly limits [an individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work ...." Social Security Ruling (SSR) 85-28, 1985 WL

24

56856, at *3 (S.S.A. January 1, 1985).[6] *Accord Higgs*, 880 F.2d at 862 ("[A]n impairment can be considered not severe ***only if it is a slight abnormality that minimally affects work ability*** regardless of age, education, and experience.") (emphasis added).

Social Security Ruling (SSR) 19-4p governs an ALJ's consideration of headache disorders. SSR 19-4p, 2019 WL 4169635 (S.S.A. Aug. 26, 2019). SSR 19-4p provides guidance on how "primary headache disorders" – including migraine headaches – are established and evaluated. *Id.* at *4. It notes that physicians diagnose a primary headache disorder "only after excluding alternative medical and psychiatric causes of a person's symptoms," and "after reviewing a person's full medical and headache history and conducting a physical and neurological examination." (*Id.* at *4.) To rule out other medical conditions, a physician "may also conduct laboratory tests or imaging scans." (*Id.*) But while such imaging "may be useful ruling out other possible causes of headache symptoms, it is not required for a primary headache disorder diagnosis." (*Id.*) For example: "[P]hysicians may use magnetic resonance imaging (MRI) to rule out other possible causes of headaches—such as a tumor—meaning that an unremarkable MRI is consistent with a primary headache disorder diagnosis." (*Id.*)

The SSR also lists the types of objective evidence that an ALJ will consider when determining whether headaches constitute a medically determinable impairment (MDI) at Step 2. *Id.* at *5-6. The ALJ "will not establish the existence of an MDI based only on a

---

[6] Although SSRs do not have the same force and effect as statutes or regulations, they "are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

25

diagnosis or a statement of symptoms" but "will consider the following combination of findings reported by an [acceptable medical source (AMS)]":

- A primary headache disorder diagnosis from an AMS. Other disorders have similar symptoms, signs, and laboratory findings. A diagnosis of one of the primary headache disorders by an AMS identifies the specific condition that is causing the person's symptoms. The evidence must document that the AMS who made the diagnosis reviewed the person's medical history, conducted a physical examination, and made the diagnosis of primary headache disorder only after excluding alternative medical and psychiatric causes of the person's symptoms. In addition, the treatment notes must be consistent with the diagnosis of a primary headache disorder.

- An observation of a typical headache event, and a detailed description of the event including all associated phenomena, by an AMS. During a physical examination, an AMS is often able to observe and document signs that co-occur prior to, during, and following the headache event. Examples of co-occurring observable signs include occasional tremors, problems concentrating or remembering, neck stiffness, dizziness, gait instability, skin flushing, nasal congestion or rhinorrhea (runny nose), puffy eyelid, forehead or facial sweating, pallor, constriction of the pupil, drooping of the upper eyelid, red eye, secretion of tears, and the need to be in a quiet or dark room during the examination. In the absence of direct observation of a typical headache event by an AMS, we may consider a third party observation of a typical headache event, and any co-occurring observable signs, when the third party's description of the event is documented by an AMS and consistent with the evidence in the case file.

- Remarkable or unremarkable findings on laboratory tests. We will make every reasonable effort to obtain the results of laboratory tests. We will not routinely purchase tests related to a person's headaches or allegations of headaches. We will not purchase imaging or other diagnostic or laboratory tests that are complex, may involve significant risk, or are invasive.

- Response to treatment. Medications and other medical interventions are generally tailored to a person's unique symptoms, predicted response, and risk of side effects. Examples of medications used to treat primary headache disorders include, but are not limited to, botulinum neurotoxin (Botox®), anticonvulsants, and antidepressants. We will consider whether

26

> the person's headache symptoms have improved, worsened, or remained stable despite treatment and consider medical opinions related to the person's physical strength and functional abilities. When evidence in the file from an AMS documents ongoing headaches that persist despite treatment, such findings may constitute medical signs that help to establish the presence of an MDI.

*Id.* at *6.

SSR 19-4p also directs the ALJ how to consider headaches when assessing the RFC:

> We must consider and discuss the limiting effects of all impairments and any related symptoms when assessing a person's RFC. The RFC is the most a person can do despite his or her limitation(s). We consider the extent to which the person's impairment-related symptoms are consistent with the evidence in the record. For example, symptoms of a primary headache disorder, such as photophobia, may cause a person to have difficulty sustaining attention and concentration. Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC.

*Id.* at *7-8.

### 2. The ALJ's conclusion that Plaintiff's migraines are nonsevere is not supported by substantial evidence.

Because significant evidence supports Plaintiff's claim that migraine headaches affect her ability to work, the undersigned finds that the ALJ's conclusion that Plaintiff's migraines are nonsevere is not supported by substantial evidence. Plaintiff testified during the February 2024 hearing that she experienced migraines with dizziness, nausea, and vision issues, and that they occurred several times per week. (AR, Doc. No. 7-2 at PageID 357, 372-388.) Plaintiff also explained that although the medication she took for migraines did help, the episodes left her feeling "very weak." (*Id.* at PageID 375.)

27

Plaintiff's complaints are corroborated by medical records. She complained of more severe headaches in September 2020, and her primary care physician prescribed Imitrex and Propranolol. (AR, Doc. No. 7-7 at PageID 931, 967.) Although she reported "significant relief" from the medication, she nevertheless still reported mild to moderate and occasional headaches. (*Id.* at PageID 931, 944, 950.) She began seeing a neurologist for her headache complaints in December 2020. (*Id.* at PageID 814.) Despite physical examinations that were essentially normal, Dr. Weinberg diagnosed episodic migraines without aura and continued Plaintiff on her medications. (*See, e.g., id.* at PageID 814, 823, 837, 844.) And a radiologist interpreted an October 2020 brain MRI as showing a nonspecific signal alteration in the supratentorial white matter, as well as a nonacute microvascular change which was "possibly associated with complicated migraine" and "more likely than demyelinating disease." (AR, Doc. No. 7-7 at PageID 967.)

After 2020, there appears to have been a period of improvement. As the ALJ noted, Plaintiff told her primary care provider in February 2022 that she had not had any migraines since February 2021. (AR, Doc. No. 7-7 at PageID 1059; *see also* Decision, Doc. No. 7-3 at PageID 431.) But Plaintiff continued to experience headaches during this time. Plaintiff told Dr. Weinberg in March 2021 that although she had only two migraines since the last visit, she occasionally experienced milder headaches. (AR, Doc. No. 7-7 at PageID 821.) She told Dr. Weinberg in June 2021 that she still had a few headaches per month, although extra strength Excedrin "usually" helped. (*Id.* at PageID 834.) In July 2022, Plaintiff told Dr. Weinberg that she had started having headaches a few times per week, up from once per month. (AR, Doc. No. 7-7 at PageID 1134.) After Dr. Weinberg

28

additionally prescribed Maxalt, Plaintiff stated in September 2022 that she was having migraines—accompanied by ringing in her ears and vision changes—once per week. (*Id.* at PageID 1141.)

The ALJ did not acknowledge or address most of this evidence when she concluded that Plaintiff's migraines were "controlled with medication" and did not cause more than a minimal effect on Plaintiff's ability to perform basic work activities. (Decision, Doc. No. 7-3 at PageID 430-31.) The Court acknowledges that an ALJ's decision "need not be so comprehensive as to account with meticulous specificity for each finding and limitation, nor is the ALJ required to discuss every piece of evidence in the record." *Correa v. Comm'r of Soc. Sec.*, No. 1:23-cv-685, 2023 U.S. Dist. LEXIS 231766, at *31 (N.D. Ohio Dec. 14, 2023) (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)). Nevertheless, the ALJ's "factual findings as a whole" must show that she "implicitly resolved the conflicts in the evidence." *Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). The ALJ must also "provide sufficient explanation for the claimant and any reviewing court to 'trace the path of his reasoning'" and explain "with specificity" how the evidence supports the RFC limitations. *Correa*, 2023 U.S. Dist. LEXIS 231766, at *31-32 (citing *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011); *Bailey v. Comm'r of Soc. Sec.*, No. 98-3061, 1999 U.S. App. LEXIS 1621, at *12 (6th Cir. Feb, 2, 1999); *Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-cv-564, 2011 U.S. Dist. LEXIS 11925, at *12 (S.D. Ohio Feb. 8, 2011)).

Here, the ALJ's failure to acknowledge significant evidence that supports the claimed severity and frequency of Plaintiff's migraines leads the undersigned to conclude that the ALJ did not resolve conflicts in the evidence, especially when considering the *de minimis* standard that applies at Step Two. *Higgs*, 880 F.2d at 862. Further, the ALJ's apparent failure to consider evidence that contradicts her conclusions signifies an impermissibly selective review of the record. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record"); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports")). Thus, the ALJ's conclusion that Plaintiff's migraines are nonsevere is unsupported by substantial evidence.

### 3. Because the ALJ's error is not harmless, reversal is warranted.

Defendant argues that the Court should nevertheless affirm the ALJ's decision because the ALJ's failure to find Plaintiff's migraines severe at Step Two is "'legally irrelevant.'" (Mem. In Opp., Doc. No. 11 at PageID 1648-49 (citing *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020)).) Defendant argues that the ALJ was required to "consider limitations and restrictions imposed by all of the individual's impairments, even those that are non-severe" in the RFC assessment. (*Id.* at PageID 1648 (citing *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (citations omitted)).) According to Defendant, because the ALJ found that Plaintiff had certain impairments that were severe, the ALJ's "thorough review of the record, along with her statement that she considered all impairments in combination, sufficiently demonstrates

30

that all impairments were considered in combination as the regulation directs." (*Id.* at PageID 1649 (citing *Emmard*, 953 F.3d at 851).) This assertion is not well-taken.

Defendant correctly asserts that an ALJ who formulates a claimant's RFC must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). And it is also true that if an ALJ finds at least one severe impairment, then the failure to find additional severe impairments at Step Two "[does] not constitute reversible error" if the ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination." *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (citing *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir.1987)). In other words, if the ALJ "finds at least one severe impairment and analyzes all impairments in the following steps, the characterization of other impairments as severe or nonsevere is 'legally irrelevant.'" *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 817 (6th Cir. 2020) (quoting *Anthony*, 266 F. App'x at 457 (6th Cir. 2008)).

However, this rule presupposes that the ALJ did, in fact, consider all nonsevere impairments when assessing the RFC. In *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015), for example, the court held that because the RFC determination "did not consider [plaintiff's] mental impairments in a meaningful way," the ALJ's error in categorizing those impairments as nonsevere was not harmless and required reversal. *Winn*, 615 F. App'x at 326.

This case is analogous to *Winn*. Here, the ALJ did not include any limitations in the RFC to account for Plaintiff's migraines. In fact, the ALJ specifically stated that she

31

rejected the postural and environmental restrictions identified by the state agency medical

consultants that could have accounted for—at least to some extent—Plaintiff's migraines:

> The postural limitations assessed by both State agency medical consultants and the environmental limitations assessed by the State agency medical consultant at the reconsideration level are not persuasive, as they are not consistent with, or supported by, the overall evidence. ***For example, the State agency medical consultant at the reconsideration level assessed environmental limitations based on increased falls, migraines and paresthesia in the bilateral lower extremities*** (Exhibit 4A/7). ***However, this is inconsistent with evidence showing [Plaintiff's] migraines are controlled with medications*** (Exhibits 3F/1, 7, 16, 34; 4F/23; 6F/10, 30), her paresthesia symptoms improved (Exhibit 16F/12), and she had a normal EMG of her lower extremities (Exhibit 5F/49, 54); 16F/8).

(Decision, Doc. No. 7-3 at PageID 439 (emphasis added).) Here, because the RFC

determination did not consider Plaintiff's migraines "in a meaningful way," the ALJ's

error is not harmless. See *Winn*, 615 F. App'x at 325-26.

## V.    REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm,

modify, or reverse the Commissioner's decision "with or without remanding the cause for

rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand

under Sentence Four may result in the need for further proceedings or an immediate

award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041

(6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming

or where the evidence of disability is strong while contrary evidence is lacking. *Faucher*

*v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the

evidence of disability is neither overwhelming nor strong while contrary evidence is

lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the medical opinion evidence and Plaintiff's migraine headaches, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 9) be GRANTED;

2. The Court REVERSE the Commissioner's non-disability determination;

3. No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

33

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).